1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRIDIM INNOVATIONS LLC,

Plaintiff,

v.

AMAZON.COM, INC.,

Defendant.

Case No.   3:15-cv-05477-JD

**ORDER RE DISMISSAL**

Re: Dkt. No. 27

TriDim Innovations LLC ("TriDim") filed this patent infringement suit against Amazon.com, Inc. ("Amazon") in December 2015. Dkt. No. 1. The case involves two patents owned by TriDim: (1) U.S. Patent No. 5,838,326, entitled "System for Moving Document Objects in a 3-D Workspace" ("'326 patent"); and (2) U.S. Patent No. 5,847,709, entitled "3-D Document Workspace with Focus, Immediate and Tertiary Spaces" ("'709 patent"). Dkt. No. 1 ¶¶ 6-12. TriDim alleges that the "carousel" feature in Amazon's Kindle Fire and Fire Phone infringes the two patents. Amazon moves to dismiss TriDim's claims for invalidity under 35 U.S.C. § 101. Dkt. No. 27. The Court held oral argument and now dismisses the complaint with prejudice.

## BACKGROUND

Inventors from the Xerox Corporation filed the '326 and '709 patents in separate applications on September 26, 1996. Dkt. Nos. 1-1, 1-2. The patents issued on November 17, 1998 and December 8, 1998, respectively, and are both set to expire on September 26, 2016. *Id.* TriDim obtained assignment of the patents. Dkt. No. 1 ¶¶ 6, 10. At the hearing on this motion, the parties advised the Court that the only claims at issue here are claim 14 of the '326 patent and claims 1 and 9 of the '709 patent. Dkt. No. 38.

The two patents have almost identical summaries and specifications. They both claim the invention of "[a] three dimensional document workspace for interacting with large numbers of

document objects," designed to help "balanc[e] the necessary tradeoffs of rapid access, number of collections and associated documents, and available screen space." Dkt. No. 1-1 at 2:65-66, 4:10-14; Dkt. No. 1-2 at 2:66-67, 4:10-14. Specifically, the patents provide a system for "hierarchically" dividing a computer workspace for documents into three areas depending on the user's "interaction rates" with certain documents: (1) "focus space" where "direct interaction with a document object occurs"; (2) "immediate memory space" where "document objects that are in use, but not currently being interacted with" are placed; and (3) "tertiary space" where "many document objects . . . that are not currently in use" are placed. Dkt. No. 1-1 at 3:14-33; Dkt. No. 1-2 at 3:15-34. In the specification, the patentee analogizes these spaces, respectively, to (1) a "desk" where documents in use are placed, (2) a space behind the desk where objects are depicted as "smaller in size" as they get a further "distance back (i.e. in the z-direction)," and (3) a "bookshelf" for items "not currently in use." Dkt. No. 1-1 at 3:21-33.

Each of the asserted claims describes a "computer controlled display system" with these features. For example, claim 14 of the '326 patent, which is typical of the asserted claims in both patents, covers:

> 1. A computer controlled display system for displaying document objects in a three-dimensional document workspace on a display, said computer controlled display system comprising:
>
> document receiving means for receiving document objects;
>
> positioning means for receiving user input for positioning document objects within said three-dimensional document workspace;
>
> workspace display circuitry for generating display information for displaying said three-dimensional document workspace and said document objects, said workspace display circuitry comprising:
>
> > circuitry for displaying a focus space, said focus space for detail display of a document object;
> >
> > circuitry for displaying an immediate space, said immediate space for ephemeral positioning of document objects that are in use but not in focus; and
> >
> > circuitry for displaying a tertiary space, said tertiary space for positioning document objects that are not in use.

Dkt No. 1-1 at 12:57-13:10. All the asserted claims describe a "computer controlled display

2

United States District Court
Northern District of California

1  system" similar to this one, though claim 1 of the '709 patent lacks a "positioning means"

2  element.  *See* Dkt. No. 1-2 at 10:64-11:14.

3       The "positioning means" element of claim 9 of the '709 patent and claim 14 of the '326

4  allows movement of document objects on the workspace.  The specifications describe a few types

5  of "gestures" that may be used to move documents among the focus, intermediate, and tertiary

6  spaces.  One called "touch [and] drop" consists of touching a document object by "positioning a

7  cursor over it and depressing a cursor control button, tracing the cursor movement with a line, and

8  then dropping the object by releasing the cursor control button at the end point of the line."  Dkt.

9  No. 1-1 at 8:65-9:2; Dkt. No. 1-2 at 9:2-6.  Another gesture, "flicking," consists of "touching the

10  object and 'flicking' it using the cursor control device in a desired direction."  Dkt. No. 1-1 at

11  9:48-56; Dkt. No. 1-2 at 9:52-60.[1]

12       The patents do not involve special software or hardware of any type.  The system and

13  gestures can be used on a "Silicon Graphics workstation," as this system "provides for generating

14  software programs which manipulate graphical objects in a three dimensional space, so description

15  of programming techniques for rendering graphical objects in a three dimensional space is not

16  deemed necessary" in the specification.  Dkt. No 1-1 at 5:29-37; Dkt. No. 1-2 at 5:33-41.  In

17  addition, the patent states that a person of skill in the art could implement the invention on any

18  commercially available computer with the functionality for "manipulating graphical objects in a

19  three dimensional space."  Dkt. No. 1-1 at 5:38-43; Dkt. No. 1-2 at 5:42-47.

20       Amazon contends that the patents are invalid under 35 U.S.C. Section 101, as applied in

21  *Alice Corp. Pty. Ltd v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014).  According to Amazon, the asserted

22  claims are directed to the abstract idea of "retrieving and arranging documents," and fail to recite

23  any additional elements that transform the claims into patentable subject matter.  Dkt. No. 27 at

24  12, 14.

25

26

27

---

28  [1]  To the extent the means of moving document objects involve a "pointer device having a switch," they are covered by Claims 1 and 6 of the '326 patent and are outside the scope of this order.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**DISCUSSION**

**I.     LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

This motion involves determining the scope of patent eligibility under 35 U.S.C. § 101.  In deciding the motion, the Court need not construe the patent claims.  Although every issued patent is presumed to be valid absent clear and convincing evidence to the contrary, courts may find patents invalid at the pleading stage and prior to formal claim construction.  *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (affirming a district court's finding of invalidity under Section 101 at the pleading stage); *Open Text S.A. v. Alfresco Software Ltd*, No. 13-CV-04843-JD, 2014 WL 4684429, at *5 (N.D. Cal. Sept. 19, 2014) (granting a 12(b)(6) motion because the asserted patents were ineligible).  "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014), *cert. denied*, 136 S.Ct. 119 (2015).  In this case, parties do not dispute the proper construction of any terms in the asserted claims, and so the Court finds it unnecessary to engage in claim construction before addressing the validity of the patents under Section 101.

Under Section 101, the scope of patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.  But "laws of nature, physical phenomena, and abstract ideas" are three "specific exceptions to § 101's broad patent-eligibility principles." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010).  In applying the Section 101 exceptions, the Court must distinguish between

1    patents that claim the "building blocks of human ingenuity" and those that "integrate the building

2    blocks into something more," because overbroad patent protection "would risk disproportionately

3    tying up the use of the underlying ideas." *Alice*, 134 S.Ct. at 2354-55 (internal quotation marks

4    and citation omitted).

5            In *Alice*, the Supreme Court set out a two-part test for determining whether a claim is

6    patent-eligible.  The Court must first "determine whether the claims at issue are directed to a

7    patent-ineligible concept." *Id.* at 2347.  For computing-related functionality, the inquiry at this

8    first step "asks whether the focus of the claims is on the specific asserted improvement in

9    computer capabilities (*i.e.*, the self-referential table for a computer database) or, instead, on a

10   process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."

11   *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016).  This inquiry

12   distinguishes between claims "directed to a specific improvement to computer functionality,"

13   which may be patentable, and claims that recite only "generalized steps to be performed on a

14   computer using conventional computer activity," which would not be patentable.  *Id.* at 1338.

15           If a patent is directed to a patent-ineligible concept, then the second step of the *Alice* test

16   requires the Court to search for an "inventive concept" that may save the patent.  *IPLearn-Focus,*

17   *LLC v. Microsoft Corp.*, No. 14-CV-00151-JD, 2015 WL 4192092, at *4 (N.D. Cal. July 10, 2015)

18   (internal quote omitted), *aff'd*, 2016 WL 3667604 (Fed. Cir. July 11, 2016).  This is a "make-or-

19   break step for patent eligibility" that requires "an element or combination of elements that is

20   'sufficient to ensure that the patent in practice amounts to significantly more than'" a patent on an

21   ineligible concept.  *Id.* (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343,

22   1344 (Fed. Cir. 2015)).  As the Supreme Court and the Federal Circuit have made perfectly clear,

23   merely implementing an abstract idea on conventional computer technology is not enough.  Patent

24   eligibility requires "concrete improvements in the recited computer technology." *Enfish,* 822 F.3d

25   at 1339*; see also Bilski*, 561 U.S. at 610–11 (limiting use of an abstract idea "to a particular

26   technological environment" insufficient for eligibility); *In re TLI Commc'ns LLC Patent Litig.*,

27   823 F.3d 607, 613 (Fed. Cir. 2016) ("[T]he claims' recitation of a 'telephone unit,' a 'server,' an

28   'image analysis unit,' and a 'control unit' fail to add an inventive concept sufficient to bring the

United States District Court
Northern District of California

abstract idea into the realm of patentability.").

## II.     THE CLAIMS ARE NOT PATENT ELIGIBLE

### A.     The Claims are Directed to an Abstract Idea

By their plain language, TriDim's claims are drawn to the very basic concept of retrieving and arranging documents based on frequency of use.  Claim 14 of the '326 patent claims a way of displaying document objects on a three-dimensional workspace, comprising of "[1] document receiving means . . . ; [2] positioning means . . . ;[3] workspace display circuitry . . . comprising circuitry for displaying a focus space . . . for detail display of a document object; circuitry for displaying an immediate space . . . for ephemeral positioning of document objects that are in use but not in focus; and circuitry for displaying a tertiary space . . . for positioning document objects that are not in use."  Dkt. No. 33-1, 12:57-13:10.  Claims 1 and 9 of the '709 patent are substantially similar in language.  Dkt. No. 33-2, 10:64-11:14, 12:5-23.  Despite the repeated use of the word "circuitry," no such circuitry is disclosed in the patents.  Much like the unpatentable subject matter in *TLI Communications*, the claims in question here are defined only in terms of their functions, which are directed to the abstract idea of retrieving and arranging documents by relative frequency of use.  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 613 ("[T]he claims, as noted, are simply directed to the abstract idea of classifying and storing digital images in an organized manner.").

None of TriDim's arguments suggest a different conclusion.  TriDim emphasizes that the patents are "directed to a *computer user interface*," but does not explain why or how this label transforms the abstract idea into a patent-eligible invention.  Dkt. No. 33 at 15 (emphasis in original).  TriDim also says that the limitation of dividing a computer display into three spaces "confine[s] the invention to a specific system and method" and consequently is "not an abstract idea."  Dkt. No. 33 at 13.  This is mere window dressing.  The patents themselves analogize the "immediate memory" and "tertiary" spaces to a "desk" and a "bookshelf."  Dkt. No. 33-1, 3:23-33; Dkt. No. 33-2, 3:24-34.  This shows that the patents represent nothing more than the abstract idea of placing more frequently used documents in a space that is more easily accessible -- an organizational system people intuitively use in a variety of contexts.  *See Genetic Techs. Ltd. v.*

1    *Merial L.L.C.*, 818 F.3d 1369, 1378 (Fed. Cir. 2016) (quoting *CyberSource Corp. v. Retail*

2    *Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed.Cir.2011)) ("[M]ethods which can be performed

3    *entirely* in the human mind are unpatentable.") (emphasis in original).

4         As a final defense, TriDim contends that the patents are not directed to an abstract idea,

5    because "the claims were 'necessarily rooted in computer technology in order to overcome a

6    problem specifically arising in the realm of computer networks.'" Dkt. No. 33 at 14 (citing *DDR*

7    *Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)). But that argument

8    misses the mark because the Federal Circuit's analysis in *DDR Holdings* was under the second

9    prong of the *Alice* test, addressing whether there is "an inventive concept sufficient to transform

10   the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 124 S. Ct. at 2357; *see*

11   *DDR Holdings, LLC*, 773 F.3d at 1257 ("[U]nder any of these characterizations of the abstract

12   idea, the '399 patent's claims satisfy *Mayo/Alice* step two.").

13      **B.**      **The Claims Lack an Inventive Concept**

14         The test of whether the claims present an inventive concept sufficient to save them from

15   ineligible abstraction also comes out against TriDim. Unlike the claims in *DDR Holdings*, neither

16   the problem Tridim's patents purportedly solve (limited screen space for the display and

17   organization of documents) nor the suggested solution (arranging documents by frequency of use)

18   is "necessarily rooted in computer technology." *DDR Holdings, LLC*, 773 F.3d at 1257; Dkt. No.

19   33 at 14. To the contrary, storing documents that are less frequently used in a library or on a

20   bookshelf as opposed to on one's desk is a common solution to a common problem of limited

21   space in physical offices everywhere. It is hard to picture any office, dorm room, or workspace

22   since the advent of the printing press that did not follow this basic concept of organization. By

23   TriDim's own admission, the patents were "specifically intended to be used with a typical

24   computer." Dkt. No. 33 at 8. But applying a "commonplace" method of organization to a

25   "particular technological environment[]" does not constitute an inventive concept, and the patents

26   here fall squarely within the type of inventions that the Supreme Court explicitly found invalid in

27   *Alice*. *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333 (Fed. Cir. 2015); *see Alice*,

28   134 S. Ct. 2347 at 2359.

7

United States District Court
Northern District of California

1    The elements of the claims that relate to the means of moving and positioning the

2    document objects suffer from the same lack of inventive concept.  According to TriDim, the

3    "touch and drop" and "flicking" gestures were "improvements specifically adapted for a 3-D

4    space" because "known techniques for operating a 2-D workspace such as drag and drop

5    techniques were not efficient."  Dkt. No. 33 at 15.  But the patents do not disclose any specific

6    ways, hardware or software, that a user may program or implement these gestures.  *See* Dkt. Nos.

7    33-1, 33-2.  Instead, the claims are no more than circular definitions.  For example, Claim 14 of

8    the patent '326 claims a "computer controlled display system" being comprised of among other

9    things "document receiving means for receiving document objects; [and] positioning means . . .

10   for positioning document objects within said three-dimensional document workspace."  Dkt. No.

11   33-1, 12:61-65.  The "positioning means" is in turn defined as being comprised of "a selection

12   means for selecting a document object; and means for indicating a destination."  *Id.* at 13:12-14:3.

13   And the "selection means" and "means for indicating a destination" are defined in equally circular

14   terms.  *Id.* at 14:4-11.  These elements that are defined only in terms of their functionalities,

15   whether considered separately or as an ordered combination, fall short of constituting an inventive

16   concept.

17   An additional problem for TriDim is that the patents and claims here, which are defined in

18   terms of their functionalities only, raise a serious preemption concern.  *See Vehicle Intelligence &*

19   *Safety LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 918 (Fed. Cir. 2015).  TriDim tries to

20   minimize the preemption threat by comparing the patents to the prior art identified in the '326 and

21   '709 patents.  Dkt. No. 33, 15-16.  But the "mere existence of a non-preempted use of an abstract

22   idea does not prove that a claim is drawn to patent-eligible subject matter."  *Id.*  Moreover, the

23   very fact that TriDim brought this patent infringement suit against Amazon's carousel feature

24   makes its disclaimer of preemption sound rather hollow.  If TriDim is in fact correct that a slight

25   change in the way the documents are stacked or organized makes a particular computer user

26   interface non-preempted, Dkt. No. 33 at 15-16, Amazon's carousel feature surely cannot infringe

27   TriDim's patents.  TriDim cannot circumvent "the prohibition against patent abstract ideas" "by

28   attempting to limit the use of [the idea]," even if "doing so reduces the amount of innovation that

8

1  would be preempted." *IPLearn-Focus,* 2015 WL 4192092, at *6.

2                                     **CONCLUSION**

3         Claim 14 of the '326 patent and Claims 1 and 9 of the '709 patent constitute a wholly

4  generic computer implementation of the abstract idea of retrieving and arranging documents based

5  on relative frequency of use.  The motion to dismiss is granted.  Because the Court finds that any

6  amendment would be futile, the dismissal is with prejudice.

7         **IT IS SO ORDERED.**

8  Dated:  September 19, 2016

9

10

11                                               _____
                                                 JAMES DONATO
12                                               United States District Judge

*United States District Court*
*Northern District of California*

9